UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BABA LODGING, LLC                                    CIVIL ACTION 10-1750

VERSUS                                               JUDGE S. MAURICE HICKS, JR.

WYNDHAM WORLDWIDE                                    MAGISTRATE JUDGE HORNSBY
OPERATIONS, INC., ET AL

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Record Document 6) filed by Defendant, Brilliant Hotelsoftware, Inc. ("Brilliant"). Brilliant argues that "this Court lacks personal jurisdiction over Brilliant, a Florida corporation with its principal place of business in Tampa, Florida, given that exercise of personal jurisdiction over Brilliant by this Court would not comport with due process, and . . . Plaintiff's allegations against Brilliant fail to plausibly state a cause of action entitling Plaintiff to the relief requested." [Record Document 6 at 1]. The motion is opposed. [Record Document 8]. For the reasons which follow, the Motion to Dismiss pursuant to Rule 12(b)(2) is **GRANTED** and the Motion to Dismiss pursuant to 12(b)(6) is **DENIED AS MOOT**.

**I.    BACKGROUND.**

BABA Lodging, Inc. ("Baba") owns and operates a hotel at 1984 Airline Drive, Bossier City, Louisiana that operated as a Howard Johnson from March 13, 2008 to October 1, 2010. [Petition at ¶2]. Plaintiff alleges that Wyndham Worldwide Operations, Inc. ("Wyndham"), a foreign corporation who handles all hotel operating systems for Howard Johnson hotels, directed Baba to install the software of defendant, Brilliant, as

Plaintiff's hotel operating system in July 2008. [Petition at ¶3]. Plaintiff contends that Wyndham and Brilliant operate a joint venture in the hotel operating system software business. [Petition at ¶4]. To support its contention of a joint venture, Baba alleges that Ryan Murphy, the technician who installed the hotel operating system at Baba's hotel, worked for Wyndham and Brilliant. [Petition at ¶5]. Baba argues that Wyndham failed to properly train Judy Free and that failure resulted in Judy Free, through her operation of the operating software, overpaying Baba's franchise fee by $50,000. [Petition at ¶6]. Baba further alleges negligence with the installation of the Brilliant software and negligent training on the use of the software that resulted in Wyndham receiving fees they were not entitled to. [Petition at ¶7]. Plaintiff contends these practices rose to the level of deceptive practices. [Petition at ¶8]. Baba argues the actions of the Defendants constitute unfair trade practices in violation of LA. R.S. § 51:1405, and Plaintiff avails itself of LA. R.S. § 51:1409 in bringing this action. [Petition at ¶12]. Baba filed suit in the 26th Judicial District Court, Bossier Parish, Louisiana on October 14, 2010. [Record Document 1-1 at 2]. Defendants removed this matter on November 22, 2010. [Record Document 1].

**II.    LAW AND ANALYSIS.**

   **A.    Rule 12(b)(2)–Lack of Personal Jurisdiction–Standard**

A district court sitting in diversity[1] may exercise personal jurisdiction over defendants if the Louisiana long-arm statute confers personal jurisdiction over them and the exercise of personal jurisdiction comports with due process under the United States Constitution.

---

[1] As this case is before this Court on diversity of citizenship subject matter jurisdiction, this Court, under Erie, is bound to apply Louisiana substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

See Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir.1999). The Louisiana long-arm statute extends to the limits of due process. See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir.2000). The Fifth Circuit has therefore collapsed the usual two-step inquiry into a single question: whether the exercise of personal jurisdiction over the defendants is permissible under the Due Process Clause of the Fourteenth Amendment. See id. The Due Process Clause permits exercising personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully availed himself of the protections and benefits of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of jurisdiction comports with "fair play and substantial justice." See id. at 214-15. These minimum contacts may be established through contacts sufficient to support "specific jurisdiction," or contacts so systematic and continuous as to support "general jurisdiction" over the defendant. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868 (1984). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir.1999).

On a pretrial motion such as this one, where no evidentiary hearing is held, the uncontroverted allegations in the plaintiff's complaint must be taken as true and any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir.1990). Those facts must create for the plaintiff a *prima facie* showing of jurisdiction. Travelers Indemnity Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 831 (5th Cir.1986). If the plaintiff satisfies that minimal standard, he must still prove the jurisdictional facts at trial or through hearing by a preponderance of the

evidence before he may obtain relief on the merits against the non-resident. Id.; Felch v. Transportes Lar-Mex, 92 F.3d 320, 326 (5th Cir.1996).

### B. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); see also, Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court recently expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009).

### C. No Personal Jurisdiction

Plaintiff argues "Wyndham's activities as a co-venturer in the State of Louisiana are sufficient to sustain the exercise of personal jurisdiction, therefore jurisdiction will attach to

Brilliant, the other participant in the venture." [Record Document 8 at 9]. Consequently, the Court must first determine if Wyndham and Brilliant are co-venturers.

Baba argues "Brilliant entered into an agreement with defendant, Wyndham Worldwide Operations, Inc.'s ("Wyndham") predecessor, Cendant Hotel Group, Inc. ("Cendant") whereby it entered into what fits the definition of a 'joint venture' under the guise of a one time payment agreement." [Record Document 8 at 2]. The Court has reviewed the Source Code License Agreement ("Agreement") that Baba argues established a joint venture between Brilliant and Wyndham. See Record Document 6-3.

"[J]oint [ ]ventures arise only where the parties intended the relationship to exist. They are ultimately predicated upon contract either express or implied." Pillsbury Mills, Inc. v. Chehardy, 90 So.2d 797, 801 (La.1956) (citation omitted). A joint venture is "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership." Florida Universal Fin. Corp. v. Cox, 493 So.2d 710, 713 (La. Ct.App. 2 Cir.1986) (citation omitted).

> In order to form a valid joint venture in Louisiana, the following elements are required:
>
> (A) All parties must consent to formation of a partnership;
>
> (B) There must be a sharing of losses of the venture as well as the profits; and
>
> (C) Each party must have some proprietary interest in, and be allowed to exercise some right of control over, the business.

Arcement Boat Rentals, Inc. v. Good, 2001-CA-1860 (La.App. 4 Cir. 5/29/02); 820 So.2d 615, 618. (citing Marine Servs., Inc. v. A-1 Indus., Inc., 355 So.2d 625, 628 (La. Ct.App. 4

Cir. 1978)). A joint venture requires that "each party ... have equal right to direct and govern the conduct of the other involved, as well as some voice in the control and management of the business undertaking which is the subject of the parties relationship." Westenberg v. Louisiana, 333 So.2d 264, 271 (La. Ct.App. 1 Cir. 1976) (citing Hauth v. Iacoponelli, 204 So.2d 767 (La.1967)). "The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint [ ]venture is a question of law." Grand Isle Campsites, Inc. v. Cheek, 262 So.2d 350, 357 (La. 1972) (citation omitted).

Applying the standards established by Louisiana law, this Court finds as a matter of law that the agreement that Brilliant and Cendant entered into does not constitute a joint venture. That agreement instead is fairly characterized as a licensing agreement. According to the Agreement, Brilliant "agreed to provide Cendant a customized version of Licensor's Brilliant (i) Brilliant CRS version [redacted] (ii) PMPro+ version [redacted] . . . ." [Record Document 6-3 at 1]. This Agreement granted Cendant

> a nonexclusive, perpetual, irrevocable (except as otherwise set forth hereinafter), worldwide, enterprise-wide, royalty-free, fully paid, license to use, access, reproduce, copy alter, adapt, modify, maintain (including, but not limited to, the correction of any defects), support, enhance, improve, update, display, distribute, perform, manufacture, market, sell, lease, sublicense, compile (in its original form or as modified by Cendant) into executable code, and/or create software programs and/or derivative works based upon, the most current version of the Source Code in accordance with the terms and conditions set forth in this Agreement, and to (among other things) enable Cendant to use the System in accordance with the applicable specifications and as set forth in the SLA. Notwithstanding the foregoing, the aforementioned licensing rights shall be limited to Cendant's (including its Affiliates') business operations and associated services only.
>
> Cendant shall be permitted to make, use, and/or access an unlimited number of copies of the Source Code (including, but

not limited to, any software programs and/or derivative works based on the Source Code) on an unlimited number of computers (owned, leased, and/or operated by Cendant and/or its Affiliates) at any of Cendant's and/or its Affiliates' sits or locations worldwide. In addition, Cendant shall have the right to transfer its rights to the Source Code to (i) its Affiliates, and/or (ii) any person or entity which has acquired the Source Code pursuant to a transfer, sale, spin-off, divestiture, or other disposition by Cendant of any Affiliate or line or block of business which utilized the Source Code while such Affiliate or business was operated by Cendant or Cendant's Affiliate, provided that such acquirer agrees in writing to assume Cendant's obligations under this Agreement. With respect to any work and/or data that Cendant is required to process for or on behalf of its former Affiliates, Cendant also may, at no additional charge, provide access to, and/or use the Source Code for, such former Affiliates for a period not to exceed three (3) years after such entity is no longer an Affiliate of Cendant. Cendant acknowledges that (except as otherwise provided herein) this Agreement grants it no title or rights of ownership in the Source Code, and that Licensor shall retain any and all ownership right, title, and interest in and to the Source Code.

In addition to the foregoing, Cendant may use its Affiliates and/or third party contractors or outsourcers in order to reproduce, copy, alter, adapt, modify, maintain, support, enhance, improve, update, display, distribute, perform, manufacture, market, sell, lease, sublicense, compile, and/or create software programs and/or derivative works based upon, the Source Code, and/or to perform work for or on behalf of Cendant with respect to the Source Code and/or the System. Cendant shall require any such third party contractors or outsourcers to sign non-disclosure agreements designed to protect the confidentiality of the Source Code and/or System.

D. "Modifications" shall mean and include any enhancements, upgrades, modifications, improvements, error corrections, bug fixes, patches, derivatives, adaptations, and/or other changes to the Source Code made by or on behalf of Cendant, which Cendant has incorporated into releases of the Source Code that are made available to its Affiliates through the use of the System. Cendant shall own and continue to own all rights,

> title, and interest in and to such Modifications, including all intellectual property rights therein and thereto, from the moment of creation and without the necessity of additional consideration.

[Record Document 6-3 at 2-3].

From this Court's review of the Agreement, neither party consented nor sought to create a joint venture or partnership between the two companies. Further there appears to be no sharing of profits or losses, instead Exhibit 3 (Record Document 6-3 at 29) establishes a one-time payment for the license to use Brilliant's Source Code. Finally, the Agreement evidences no control by Brilliant over Wyndham and its operations. This Court can find no joint venture between Brilliant and Wyndham. Not even a tortured construction could glean a joint venture from that document. As a result of this finding, Wyndham's contacts with the state of Louisiana cannot be attributed to Brilliant.

Therefore, the exercise of this Court's jurisdiction over Brilliant depends solely on Brilliant's contacts with the state of Louisiana. It is uncontested that Brilliant has no offices are employees in Louisiana. Baba makes the argument that since Brilliant is a worldwide company it would be anathema to find no contacts with the forum state.

First, Baba argues that Brilliant's website subjects Brilliant to the general jurisdiction of this Court. However, the maintenance of a passive website for advertising purposes does not subject a foreign company to a forum's jurisdiction absent additional contacts. See Mink v. AAAA Development LLC, 190 F.3d 333, 336-37 (5th Cir.1999). The Court has reviewed Brilliant's website. There is no sharing of information. If an interested party wishes to purchase Brilliant's services, then that person must call Brilliant directly. From this Court's review, Brilliant's website is passive and thus cannot serve as the basis for this

Court's exercise of general jurisdiction.

Secondly, Brilliant's complaint makes an argument for specific jurisdiction when arguing that Ryan Murphy, who installed the hotel operating system software in Plaintiff's hotel, is an employee of both Wyndham and Brilliant. See Petition at ¶5. However, Patrick Van Der Wardt, President of Brilliant, swore under penalty of perjury that "none of the other individual Defendants named in the Petition, to wit, 'Ryan Murphy', 'Tara Posey', 'Joey Garcia' and 'Judy Free' have ever worked for Brilliant as an employee, contractor or otherwise and I have no knowledge as to any of these individuals." [Record Document 6-2 at 2]. Plaintiff has presented no contrary information to these sworn facts, except for the argument that Wyndham and Brilliant engaged in a joint venture. Plaintiff has presented some business forms from Wyndham containing Brilliant's logo, but from this Court's review, it merely indicates the origin of the operating software utilized by Wyndham and not a joint venture between two non-affiliated companies.

  **D.** **No Cause of Action**

Because this Court has no personal jurisdiction over Brilliant, then it need not consider Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant's Motion to Dismiss is **DENIED AS MOOT**.

**III.** **CONCLUSION.**

Based on the foregoing, the Court finds that the Rule 12(b)(2) Motion to Dismiss is **GRANTED** and the Rule 12(b)(6) Motion to Dismiss is **DENIED AS MOOT**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of April, 2011.

               _____
                S. MAURICE HICKS, JR.
               UNITED STATES DISTRICT JUDGE